FILED & ENTERED

MAR 02 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Suzannne Marie Takowsky,<br><br><br><br><br>Debtor.<br>_____<br><br>Suzanne Takowsky,<br><br>Plaintiff,<br><br>v.<br><br><br>Del Toro Loan Servicing, Inc., a California corporation; Alan I. Sherman and Rachel Sherman, Trustees of the Alan I. Sherman and Rachel Sherman Trust dated 11/22/1994; Arden Management, LLC, a limited liability company; and Borkes Capital Management, LLC, a limited liability company,<br><br>Defendants.<br>// | CHAPTER 13<br><br>Case No.: 2:08-bk-14149-NB<br>Adv No:  2:11-ap-02468-NB<br><br>**MEMORANDUM DECISION ON DEFENDANTS' MOTIONS TO DISMISS AND MOTION TO EXPUNGE *LIS PENDENS*** <br><br>Status conference<br>Date:   March 20, 2012<br>Time:   1:00 p.m.<br>Courtroom:   1545<br><br>Trial<br>Date:   June 18, 2012<br>Time:   10:00 a.m.<br>Courtroom: 1545 |

-1-

## I.  INTRODUCTION[1]

A foreclosure sale of the residence at 1931 North Beverly Drive, Beverly Hills, California 90210 (the "House") occurred on July 18, 2011.  This adversary proceeding seeks to recover the House so that it can be sold or refinanced to pay creditors (Dkt. 41 at 16:7), or alternatively other relief including compensatory and punitive damages.

According to the first amended complaint ("FAC") (Dkt. 21) one or more of the defendants promised that the loan at issue (the "Loan") would be reinstated upon payment of $14,158.20, but the foreclosure sale occurred despite timely payment of that sum.  The defendants do not deny receiving those funds, but they argue that the plaintiff could not reinstate the Loan without also bringing a senior lien and real property taxes current.  This Memorandum Decision addresses the defendants' motions to dismiss the FAC and to expunge a related *lis pendens*.

For simplicity the term "Plaintiff" refers to both the above-captioned debtor and, as the context may suggest, her non-debtor husband, Pedro Ferre.  "Defendants" are the loan servicer, the lender with the junior deed of trust ("DOT") on the House, and the purchasers at the foreclosure sale – namely Del Toro Loan Servicing, Inc. ("Servicer"), Alan I. Sherman and Rachel Sherman, Trustees of the Alan I. Sherman Trust dated 11/22/1994 ("Lender"), and Arden Management, LLC and Borkes Capital Management, LLC ("Purchasers").

For the reasons set forth below, I will issue orders (a) denying the motions to dismiss as to Plaintiff's claim for fraud, (b) granting the motions to dismiss as to the remaining claims but with leave to amend the complaint because it appears possible (indeed likely) that Plaintiff can amend the complaint to state such claims, (c) denying the motion to expunge the *lis pendens*, setting the amount of the undertaking at $-0-, and denying the request for attorneys' fees, (d) denying as moot Plaintiff's request to

---

[1] Unless the context suggests otherwise, references to a "Chapter" or "Section" ("§") refer to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"), a "Rule" means the Federal Rules of Bankruptcy Procedure ("FRBP"), Federal Rules of Civil Procedure ("FRCP"), Federal Rules of Evidence ("FRE"), or Local Bankruptcy Rules ("LBR"), and other terms have the meanings provided in the Code and the rules.

deem her FAC to be amended to allege a demand for a "beneficiary statement" (*see* Dkt. 41 at 11:15-27), and (e) granting Plaintiff's request to file a verification of the FAC *nunc pro tunc* (*see* Dkt. 33 at 14).

## II.     BACKGROUND

### A.     Procedural background

On March 31, 2008 (the "Petition Date") Plaintiff filed her chapter 13 petition. Plaintiff's amended chapter 13 plan, which was confirmed on September 17, 2008, provides for a 100% dividend to creditors, partly through payments during the term of the plan and, as to any remainder, through a sale or refinance of the House (Main Case Dkt. 32).

Plaintiff attempted to stop the foreclosure process by filing a motion for a temporary restraining order and preliminary injunctive relief, but her motion was denied (Dkt. 5). On July 13, 2011 she filed a Notice of Action Pending with the Los Angeles County Recorder (the "*lis pendens*") (Dkt. 9).

On July 18, 2011 the foreclosure sale occurred and Purchasers were the highest bidder (Dkt. 27 Ex.C). On July 28, 2011 Servicer, acting in its capacity as Trustee under the DOT, recorded a Trustee's Deed Upon Sale conveying the House to Purchasers.

Plaintiff's FAC (Dkt. 21) asserts claims for (1) wrongful foreclosure, (2) cancellation of instrument, (3) quiet title, (4) breach of duty under deed of trust, (5) fraud and deceit, and (6) breach of covenant of good faith and fair dealing. Defendants filed motions to dismiss ("MTD") and a motion to expunge the *lis pendens* (Dkt. 24-26). Plaintiff filed opposition papers (Dkt. 33-35 & 41), Defendants filed reply papers (Dkt. 38 & 43), and at the direction of the Court all parties filed supplemental briefs relating to this Bankruptcy Court's jurisdiction and authority to hear the parties' disputes and issue either a final judgment or a report to the United States District Court with recommended findings of fact and conclusions of law (Dkt. 44-45).

Hearings were held on December 15, 2011, and January 10 and February 7,

2012. At those hearings Defendants generally adopted each others' arguments, and for convenience this Memorandum Decision will speak of all arguments as "Defendants'" arguments even if not all of them actually assert such arguments.

Tentative rulings on the motions are reflected in a written Tentative Ruling filed on February 6, 2012 (Dkt. 46). On February 10, 2012 a scheduling order was entered setting various deadlines and a trial date of June 18, 2012 at 10:00 a.m.

### B.    **Factual allegations**

In 2008 Plaintiff borrowed approximately $135,000 from Lender, secured by a second lien on her House. FAC (Dkt. 21) at 3:21-4:5. On March 16, 2011, Servicer issued a Notice of Default and Election to Sell Under Deed of Trust (the "NOD") (FAC (Dkt. 21) at 4:23-25; Def. RJN (Dkt. 27) Ex.A). The NOD states in part:

> … you may have the legal right to bring current your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. … [¶] This amount is $5,722.18 as of 3/16/2011, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. … [T]he beneficiary or mortgagee **may require as a condition of reinstatement** that you provide reliable written evidence that you **paid all senior liens, property taxes**, and hazard insurance premiums. [Def. RJN (Dkt. 27) Ex. A at 1, emphasis added]

According to Plaintiff, Servicer subsequently represented that "the sum of $14,158.20 was required to reinstate the loan … nor were any other defaults denominated nor other performance demanded." FAC (Dkt. 21) at 5:6-8. Plaintiff relies partly on alleged oral communications with persons at Servicer and partly on a one-page spreadsheet provided by Servicer entitled "Loan Reinstatement Calculation" (which Plaintiff sometimes refers to as a "beneficiary statement") (*id.* at 5:1-9 & Ex.3) (the "Reinstatement Spreadsheet").

The Reinstatement Spreadsheet is dated July 1, 2011 and includes the following

-4-

phrase:

> **To Reinstate as of 07/01/2011, Please Pay: $14,158.20**
> [Complaint, Ex.3, emphasis in original]

On July 8, 2011, Plaintiff wired $14,158.20 to Servicer. Approximately an hour later, however, Plaintiff received a letter stating:

> [Servicer] is in receipt of a wire as [of] 07/08/2011 in the amount of $14,158.20 …. This amount brings the account current; however, it does not cure the default on the account. We have information that the borrower is delinquent on her 1st lien with Wachovia Mortgage in the amount of $65,582.84 as of 07/06/2011. … Property taxes are also due on the account for the 2d half of 2010-2011 …. [¶] … Reliable written evidence that the foregoing amounts have been paid is required prior to the reinstatement. See Cal. Civ. Code § 2924c(a)(1). [Ferre Decl. (Dkt 35) Ex.4]

The foreclosure sale went forward on July 18, 2011. Purchasers were the highest bidder with a bid of $200,100 (Dkt. 27 Ex.C).

**III.    ISSUES**

    **A.    Jurisdiction, Authority, and Abstention**

Defendants raise several questions regarding which court should hear the parties' disputes: Does this Bankruptcy Court have jurisdiction? Does this Bankruptcy Court have the authority to issue a final judgment, as opposed to issuing proposed findings of fact and conclusions of law for review *de novo* by the District Court? Is abstention warranted?

    **B.    Statute of Frauds**

Does the California statute of frauds, Cal. Civ. C. § 1698, bar Plaintiff's assertion that her payment of $14,158.20 was sufficient to reinstate the loan and/or stop the foreclosure process?

    **C.    Tender**

Does the requirement to tender payment to Lender apply to Plaintiff's claims? If so, is she excused because the foreclosure sale was void *ab initio*? Alternatively, if a tender of funds is required, is the $14,158.20 sufficient rather than the entire indebtedness?

### D. **Fraud and Deceit**

Does Plaintiff state a cognizable claim for fraud and deceit? Are remedies for fraud limited to damages, or can Plaintiff obtain other remedies such as unwinding/avoiding the foreclosure sale?

### E. *Lis Pendens*

Should the *lis pendens* be expunged? If not, what bond/undertaking must Plaintiff provide as a condition of maintaining the *lis pendens*? Should attorneys' fees be awarded?

## IV. DISCUSSION

The legal standards on a motion to dismiss are well established. Dismissal for failure to state a claim upon which relief can be granted is appropriate if the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 12(b)(6) (incorporated by Fed. R. Bankr. P. 7012). In addition, in alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b) (incorporated by Fed. R. Bankr. P. 7009).

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the nonmoving party. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

In addition to considering "material which is properly submitted as part of the complaint" (*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990)) the Court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1990).

Moreover, under Federal Rule of Evidence 201, the court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). *See* Servicer and Lender's Request for Judicial Notice ("RJN") (Dkt. 27); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v.* Carey, 353 F.3d 750, 758 (9th Cir. 2003); *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### A.  Jurisdiction, Authority, and Abstention

This Bankruptcy Court has jurisdiction and has the authority to issue a report and recommendation to the District Court for the reasons set forth in the Tentative Ruling (Dkt 46) at 3:18-6:3. Abstention is not warranted for the reasons also set forth in the Tentative Ruling (Dkt 46) at 6:4-7:18.

### B.  Statute of Frauds

Plaintiff alleges that Servicer made *oral* statements regarding payment of $14,158.20 to reinstate the Loan or halt the foreclosure process. Defendants argue that Plaintiff cannot rely on those alleged oral statements because of the California statute of frauds, Cal. Civ. C. § 1698. *See Stafford v. Clinard*, 87 Cal.App.2d 480, 481 (1948); *Justo v. Indymac Bancorp*, 2010 WL 623715 (E.D. Cal.).[2]

Plaintiff's initial response is to sidestep any reliance on oral statements and attempt to shift the burden to Defendants. She argues that she demanded a "beneficiary statement" from Servicer and she was only required to pay what was set

---

[2] Defendants' reliance on the statute of frauds is explicit as to Plaintiff's third and sixth claims – to quiet title and for alleged breach of the implied covenant of good faith and fair dealing (MTD (Dkt. 26) at 14:5-15 & 20:25-21:5). The statute of frauds argument is also implicit in many of Defendants' other arguments because they treat the payment of $14,158.20 as insufficient to halt the foreclosure, and they argue that instead Plaintiff was required to tender the full amount owed to Lender. *See* MTD (Dkt. 26) at 12:3-21 (first claim, for wrongful foreclosure, must be dismissed because of non-payment of senior loan and taxes); *id.* at 12:22-13:8 (second claim, for cancellation of instrument, must be dismissed "because there is no tender of the deficiency owed to [Lender] either before foreclosure or in the FAC); *id.* at 13:24-14:15 (third claim, to quiet title, must be dismissed because "'a mortgagor cannot quiet his title against the mortgagee without paying the debt secured'"); *id.* at 14:16-16:8 (fourth claim, for breach of duty under deed of trust, must be dismissed because of lack of contractual or other duty to halt foreclosure upon payment of $14,158.20).

forth in that statement.

Plaintiff acknowledges that any items omitted from a beneficiary statement are not *permanently* waived. Rather, she argues, foreclosing based on any omitted items would require commencement of a new foreclosure process that included such items – *i.e.,* the foreclosure sale that actually took place was either void or voidable and presumably, before a new foreclosure process could be completed, she would hope to sell or refinance the House. *See* Plaintiff's Opposition (Dkt. 33 at 8:5-9:4) and (Dkt. 41 at 8:16-9:14) (citing 4 Miller & Starr, *Cal. Real Estate* (3d ed. 2011, Supp. 2011), § 10:189.

Plaintiff's premise is flawed. Assuming for the sake of discussion that she made a timely demand for a beneficiary statement, the form of that statement is established by California law and there is no requirement that it list the dollar amounts owed to third parties, which amounts may be unknown to the lender. *See* Tentative Ruling (Dkt. 46) at 7:20-8:8. Therefore, Plaintiff's request to deem her FAC to be amended to allege a demand for a "beneficiary statement" (Dkt. 41 at 11:15-27) will be denied as moot.

In the alternative, Plaintiff relies on the written Reinstatement Spreadsheet. She does not explicitly argue that the Reinstatement Spreadsheet is a sufficient writing to overcome the statute of frauds, but she repeatedly insists that the language in the Reinstatement Spreadsheet should be binding on Defendants (apparently meaning, again, that they should have halted the foreclosure process and would have to recommence it in order to be able to foreclose based on non-payment of the senior lien and real property taxes, which would give her time to sell or refinance the House).

This argument has some appeal. After all, the Reinstatement Spreadsheet appears to support Plaintiff's claims. Defendants argue that payment of $14,158.20 was never represented as the "only" requirement to halt foreclosure (MTD (Dkt. 26) at 20:13 & 20:34), but in fact the Reinstatement Spreadsheet could be read to state or imply that it was the only requirement. It states, without qualification, "**To Reinstate as of 07/01/2011, Please Pay: $14,158.20**" (emphasis in original). At this stage all

reasonable inferences must be drawn in favor of Plaintiff as the nonmoving party. *al Kidd v. Ashcroft*, 580 F.3d at 956.[3]

To be precise, although the Reinstatement Spreadsheet and the Servicer's alleged oral statements use terminology such as "reinstatement," it is possible to agree to halt a foreclosure process without requiring reinstatement of the loan. The issue is what the parties intended or represented, not what terminology was used, although the terminology may shed light on what the parties intended or represented. In any event, Plaintiff alleges oral representations regarding the payment of the $14,158.20 and also points to a writing that may support those allegations.

Nevertheless, Plaintiff's allegations, at least as currently expressed in the FAC, are missing one element that is required to overcome the statute of frauds. Although Defendants have not argued this issue, the document on which Plaintiff relies does not appear on its face to be signed or subscribed by Servicer or Lender. True, it seems likely that the Reinstatement Spreadsheet was delivered under cover of some letter or email that contained a signature or the equivalent, but no such allegation appears in the FAC and therefore Defendants have had no opportunity to respond to such allegation. *See Lamle v. Mattel, Inc.,* 394 F.3d 1355, 1362 (Fed. Cir. 2005) (typewritten name on email satisfied statute of frauds); *Donovan v. RRL Corp.*, 26 Cal.4th 261, 277-278 (2001) (printed name in newspaper advertisement satisfied statute of frauds); 1 Witkin, *Summary of California Law* ("Witkin") Contracts § 351 at 397-98.

For all of the foregoing reasons, the FAC does not include sufficient allegations to overcome the statute of frauds. Therefore Plaintiff cannot enforce any alleged oral promises regarding the $14,158.20. As set forth below, the claim for fraud and deceit does not depend on an enforceable oral promise, but the remaining claims in the FAC must be dismissed.

Leave to amend should be freely given. *See Jackson v.* Carey, 353 F,.3d at 758;

---

[3] Plaintiff's Opposition papers also set forth in greater detail the alleged oral communications, the substance of which could be included in a Second Amended Complaint. *See* Ferre Decl. (Dkt. 35) at 4:1-15.

*Lucas*, 66 F.3d at 248. Therefore such dismissal of these claims will be without prejudice to filing a Second Amended Complaint.

The remainder of this Memorandum Decision will revisit the effect of the statute of frauds in the context of Defendants' other arguments and each of Plaintiff's claims.

**C.    Tender**

Defendants argue that Plaintiff cannot maintain any of her claims – with the possible exception of her fifth claim for fraud and deceit – without tendering the full amount owed to Lender. *See* footnote 2 above and MTD (Dkt. 26) (citing authorities). If Defendants are correct then it appears likely that Plaintiff could not tender the full amount owed, which appears likely to be well over $150,000. *See generally* Dkt. 27 Ex.B (Notice of Trustee's Sale, dated June 21, 2011, reciting $147,490.40 owed as of that date). As Defendants argue (Reply (Dkt. 43) at 4:10-18), a proposed future payment through the Chapter 13 plan is not a sufficient tender (if tender is required).

Plaintiff argues that no tender is required because the foreclosure sale is void. But Plaintiff's argument rests on alleged *oral* representations that the foreclosure process should have been halted based on payment of the $14,158.20, and as set forth above the allegations in the FAC are insufficient to make the alleged oral representations binding.

Nevertheless, further discussion of the law regarding tender is appropriate for several reasons. First, it appears likely that Plaintiff can amend her FAC to assert claims that are not barred by the statute of frauds that that might ordinarily require a tender, such as a claim for wrongful foreclosure or to quiet title. Second, the parties have already briefed and argued the issues and a ruling should help to clarify the issues for trial. Third, for purposes of setting the *lis pendens* undertaking it is appropriate to consider the arguments regarding tender so as to assess the likelihood that Plaintiff ultimately will prevail on the merits.

Therefore the discussion in the rest of this section assumes that Plaintiff can overcome the statute of frauds and could establish at trial that Servicer did in fact

represent that payment of $14,158.20 would halt the foreclosure process. The question is whether in these circumstances Plaintiff nevertheless must tender the full amount owed to Lender in order to set aside the foreclosure sale or assert her other claims. The answer is no.

By way of background, California laws governing foreclosure make a sharp distinction between reinstatement of a loan prior to the scheduled foreclosure sale and *redemption* of a loan after the foreclosure sale. *Compare* Cal. Civ. C. § 2924c(e) (reinstatement up to five business days *prior to* scheduled trustee's sale) *with* Cal. C. Civ. P. § 729.030 (redemption periods of three months or one year *after* trustee's sale). Reinstatement only involves curing the defaults, not paying the entire indebtedness. *See* Cal. Civ. C. § 2924c(a)(1). Redemption, in contrast, does require payment of the entire indebtedness. *See* Cal. C. Civ. P. § 729.030. This context is helpful in examining the cases that require a plaintiff to tender the full amount owed.

The tender rule has been summarized as requiring that "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (2d Dist. 1984) (citations omitted). Assuming for the moment that Plaintiff's actions are based on "irregularities" in the "sale procedure," the tender rule has an important limitation: it is "premised upon the equitable maxim that a court of equity will not order that a *useless act* be performed." *Id.* at 578-79 (citation omitted, emphasis added).

Why would it be a "useless act" to set aside a foreclosure sale without tender of the full amount owed? Because in typical cases borrowers fail to explain how anything would have been different if the lender had abided by everything it allegedly was supposed to do, and therefore even if those borrowers could prove the alleged procedural irregularities they would not establish an entitlement to anything more than a right to redeem. *See id. See also FPCI Re-Hab 01 v. E & G Investments, Ltd.,* 207 Cal. App. 3d 1018, 1023 (2nd Dist. 1989) (similar reasoning in context of alleged bid-chilling:

1  "In order to prove it was damaged by the irregularities in the foreclosure sale which
2  dissuaded or prevented a higher bid, the [party seeking to set aside the foreclosure
3  sale] would have to produce a ready, willing and able buyer who would have paid the
4  higher price but for the wrongful conduct.  Otherwise, damages alleged would be
5  speculative.").

6        This case is different.  According to Plaintiff, Servicer orally represented that
7  there would be no present foreclosure at all, under *any* procedures, upon the tender of
8  $14,158.20.  If those alleged oral representations are enforceable then setting aside the
9  foreclosure sale is not a "useless act" because Plaintiff not only was able to pay the
10 $14,158.20 but actually did so, and therefore the foreclosure process should have
11 stopped (she claims), which could have given her time to refinance or sell the House
12 before a new foreclosure could be completed.  In other words, in these circumstances
13 (which include the hypothesis that Plaintiff could overcome the statute of frauds) the
14 tender rule does not apply because its premise does not apply.

15       Alternatively Plaintiff argues, and Defendants do not dispute, that if a foreclosure
16 sale is void *ab initio* then no tender is required.  Plaintiff argues persuasively that if
17 Servicer did agree to halt the foreclosure process in exchange for payment of the
18 $14,158.20 (and if that agreement is not unenforceable under the statute of frauds),
19 then Servicer and Lender had no authority to proceed with foreclosure so the
20 foreclosure sale is void.  *See generally Bank of America, N.A. v. La Jolla Group II*, 129
21 Cal.App.4th 706 (2005); *Dimock v. Emerald Props., LLC,* 81 Cal.App.4th 868 (2000);
22 *Little v. CFS Service Corp.,* 188 Cal.App.3d 1354, 1358-59 (1987); *Bisno v. Sax*, 175
23 Cal.App.2d 714, 724 (1959).[4]

24       Defendants argue that the sale is only void when there is a defect in giving
25 notices and the trustee's deed does not contain the required recitals.  Reply (Dkt. 43) at

---

[4] Plaintiff's prayer does not explicitly seek a decree that the foreclosure sale is void (*id.* at 15:5-16:3), but other portions of the FAC refer to the sale as "void" (*e.g.,* id. at 7:2), and Plaintiff seeks a decree quieting title as well as a decree canceling and voiding the Trustee's Deed Upon Sale.  FAC (Dkt. 21) at 13:14-20 & 15:5-16:3.  Under the circumstances it seems fair to read the FAC as seeking a judgment that the foreclosure sale is void, although if Plaintiff files a Second Amended Complaint that should be made explicit.

4:19-28 (citing *inter alia* Miller & Starr, *Cal. Real Estate 3d*, § 10:210 (2011)).  That is not the law, nor is it what the Miller & Starr treatise says.  That treatise gives examples of when a sale is void, but it does not state that those are the only ways in which a sale can be void.  *See* Miller & Starr at § 10:210, text accompanying nn. 21-22.

Alternatively, whether a plaintiff is "required to tender is a matter of discretion left up to the Court" and "tender may not be required where it would be inequitable to do so."  *Trapp v. Chase Home Finance, LLC*, 2010 WL 4703864 at *4 (C.D. Cal.) (citations and internal quotation marks omitted).  If Plaintiff is able to overcome the statute of frauds, then she might be able to prove at trial the alleged oral representations that the foreclosure sale would be continued upon payment of $14,158.20, not the full amount owed to Lender.  In these circumstances no tender will be required as a precondition to Plaintiff's assertion of her claims.

In sum, under the FAC all of Plaintiff's claims except her claim for fraud and deceit are barred by the statute of frauds and the tender rule.  But Plaintiff will have leave to amend her FAC and may be able to add sufficient allegations to overcome both the statute of frauds and the tender rule.

### D.  **Fraud and Deceit**

Defendants do not appear to raise the statute of frauds in connection with Plaintiff's claim for fraud and deceit.  But cf. MTD (Dkt. 26) at 17:4-6 (arguing that the FAC "fails to provide any documentation evidencing the alleged misrepresentation which would have amounted to a modification of the [DOT]").  In any event, the statute of frauds is intended to prevent frauds, not bar claims for fraud.[5]

Plaintiff does not specify a particular type of fraud and deceit, but the elements of fraudulent misrepresentation have been stated as follows:  (a) misrepresentation (false representation, concealment, or nondisclosure);  (b) knowledge of falsity (or "scienter");

---

[5] The statute of frauds is intended to address potential fraud in connection with oral promises, which are easily alleged and hard to disprove.  But claims for fraud and deceit are more difficult to prove and it is well established that the statute of frauds does not bar claims for fraud because the statute should not be used to aid in the perpetration of a fraud.  *See* 5 Witkin, Torts § 783 at 1134-35 & Supp. 2011.

(c) intent to defraud, *i.e.,* to induce reliance; (d) justifiable reliance; and (e) resulting damage. Witkin, Torts § 772 at 1121 (citing *inter alia* Cal. Civ. C. § 1709). A promise made without any intention to perform may constitute fraud. *See id.,* Torts § 781 & Supp. 2011.

The FAC alleges most of these elements. It alleges that the oral representations by Servicer's representative, Carrie Dickman, were "false, and known by her to be false, in that Defendants asserted that the failure to pay [the senior] note and the property taxes were events of default, and that the Note [for repayment of the Loan] and [the DOT] would not be reinstated unless those obligations were performed." FAC (Dkt. 21) at 12:17-20. The FAC then alleges that Plaintiff "reasonably relied" upon those representations by paying the $14,158.20. *Id.* at 13:1-6.

One problem with the latter allegation is that the elements of fraud include "justifiable" reliance whereas Plaintiff alleges that she "reasonably" relied on the alleged statements. *Compare* Witkin, Torts § 772 at 1121 *with* FAC (Dkt. 21 at 13:1). There is a difference: justifiable reliance means that the circumstances were such as to make it reasonable for Plaintiff herself (*not* a hypothetical reasonable person) to accept the defendant's statements without an independent inquiry or investigation. Witkin, Torts § 812 & Supp. 2011.

Defendants obliquely allude to this defect (MTD (Dkt. 26) at 17:9-18:4), but do not really argue the issue so this claim will not be dismissed on this basis. Nevertheless, Plaintiff should state the elements of this claim accurately if she files a Second Amended Complaint, and she should be prepared to offer evidence of justifiable reliance at trial.

At oral argument Defendants argued that the remedies for fraud are limited to damages, and based on that premise Purchasers argue that their title to the House should be free of any cloud and the *lis pendens* should be expunged. Their premise is incorrect.

"[W]hen the legal title to property has been acquired by fraud, the available

remedies include 'quieting title in the defrauded equitable title holder's name and making the legal title holder the constructive trustee of the property for the benefit of the defrauded equitable titleholder.'" *Walters v. Fidelity Mortg. of CA*, 730 F.Supp.2d 1185, 1198 (E.D. Cal. 2010). "'It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties.'" *Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 103 (2011) (quoting *Lo v. Jensen*, 88 Cal.App.4th 1093, 1097-1098 (2001)) (other citations omitted). *Cf. Munger v. Moore*, 11 Cal.App.3d 1 (1970) (awarding damages on facts apparently similar to those alleged by Plaintiff, but not addressing whether alternative remedies also would be available).

For all of the foregoing reasons Plaintiff's claim for fraud and deceit will not be dismissed. But if Plaintiff files a Second Amended Complaint then she should clarify that she asserts "justifiable" reliance rather than "reasonable" reliance.

**E.**     ***Lis Pendens***

Because Plaintiff's remedies include possible recovery of the House a *lis pendens* was appropriately filed to protect the interests of Plaintiff and her bankruptcy estate in the House. Defendants argue that Plaintiff should be required to post a bond or other undertaking as a condition for continuing the *lis pendens*, but the present record does not support such a requirement.

Federal courts look to state law in matters pertaining to *lis pendens*. *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at * 11 (N.D. Cal.) (citing 28 U.S.C. § 1964). Under California Code of Civil Procedure section 405.30, a *lis pendens* may be expunged on either of two grounds: (1) plaintiff's pleading does not contain a real property claim (which Defendants do not argue), or (2) plaintiff has not shown the probable validity of the real property claim by a preponderance of the evidence. *Id.* (citing Cal. C. Civ. P. §§ 405.31, 405.32). Plaintiff as the party seeking to maintain the

*lis pendens* has the burden of proof.  Cal. C. Civ. P. § 405.32.

"Probable validity" exists when "it is more likely than not that the claimant will obtain a judgment on the claim." *Id.* at § 405.3.  To determine probable validity the court must look beyond the Plaintiff's pleadings and examine the factual merit of the claim – in effect, forecast the probable outcome at trial.  *Kirkeby v. Superior Court of Orange County*, 33 Cal.4th 642, 651, 15 Cal.Rptr.3d 805, 93 P.3d 395 (2004).  As for an undertaking, any party with an interest in the real property may move to require an undertaking by the claimant as a condition to maintaining the *lis pendens* of record, and the court may order an undertaking of a nature and in an amount that it determines to be just.  Cal. C. Civ. P. § 405.34.

The court may examine declarations and oral testimony and "make any orders it deems just to provide for discovery by any party affected by a motion to expunge the notice."  Cal. C. Civ. P. § 405.30.  Neither Plaintiff nor Defendants have sought to present declarations or oral testimony on this issue, and at this stage of the proceedings that seems unwarranted.

Based on an examination of the merits, as set forth above, Plaintiff has met her *prima facie* burden to show the probable validity of her claims affecting interests in the House.  In addition, although Defendants have requested an undertaking, it appears that their interests in the House are protected by a large equity cushion:  Plaintiff alleges that the equity in the House is approximately $555,000 (FAC (Dkt. 26) at 13:8-12) and, taking judicial notice of both her original and amended bankruptcy Schedule A, it does not appear that Plaintiff has been inconsistent in alleging that there is a substantial equity in the House (Case No. 2:08-bk-14149-NB, Dkt. 9 & 33)).  Therefore based on the present record the amount of the undertaking will be set at $-0-.

Defendants also seek an award of attorneys' fees.  A court shall award reasonable attorney's fees to the party prevailing on an expungement motion, unless it finds that "the other party acted with substantial justification or that other circumstances would make the imposition of attorney's fees and costs unjust."  Cal. C. Civ. P. §

405.38.  Under the circumstances both parties have acted with substantial justification and in addition the circumstances would make imposition of attorneys' fees and costs unjust at this stage, prior to a trial on the merits.

## V. CONCLUSION

Based on the foregoing all of the claims in the FAC except the claim for fraud and deceit will be dismissed as moot, but with leave to file a Second Amended Complaint.  It is conceivable that Plaintiff would choose to proceed based on the one remaining claim in the FAC, and therefore her request to file belatedly her verification of the FAC will be granted (the request was included in her Opposition papers rather than in any separate motion, but Defendants did not object to that less costly procedure).

More likely, Plaintiff will choose to file a Second Amended Complaint.  It does not appear that Plaintiff needs much time to make such amendments, nor does it appear that Defendants will be surprised by any such amendments.  Therefore the dismissal Orders will set brief deadlines to file a Second Amended Complaint and Answers thereto.  Unless a party in interest seeks to change the previously agreed trial date and schedule, those things will be deemed to apply to the amended pleadings.

\###

DATED: March 2, 2012

_____
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:
**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4**) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **_MEMORANDUM DECISION ON DEFENDANTS' MOTIONS TO DISMISS AND MOTION TO EXPUNGE LIS PENDENS_** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **_3/2/2012_**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Richard T. Baum: rickbaum@hotmail.com, rickbaum@hotmail.com
Coby R. Halavais: coby@halavaislaw.com
Amy E. Martinez: amy.martinez@geracilawfirm.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Suzannne Marie Takowsky
1931 North Beverly Dr
Beverly Hills, CA 90210

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                             **F 9021-1.1.NOTICE.ENTERED.ORDER**